UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

DANIEL R. ROATH,
MARY A. ROATH,

      Plaintiff,

v.                                  Case No. 10-C-0228

UNITED STATES OF AMERICA,

      Defendant.

---

DECISION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 10)

Daniel R. Roath and Mary A. Roath ("Roaths") brought suit against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), to recover costs for property damage. The United States seeks judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c),[1] (Doc. 10), asserting it is not subject to liability because the alleged government conduct was a discretionary function that insulates it in accordance with 28 U.S.C. § 2680(a). The Roaths oppose the government's motion for judgment on the pleadings and assert that the discretionary function exception from liability does not apply because the United States violated its mandatory statutes, regulations and policies. (Doc. 15.) For the reason referenced further below, this court grants in part, and denies in part, defendant's 12(c) motion.

---

[1] In the interim and upon the parties' request, the court referred the matter to a United States Magistrate Judge for mediation. (Doc. 30-31.) The mediation did not result in a settlement and the case was referred back to this court for resolution. (Doc. 36.)

I.

The Roaths own approximately one acre in Walworth County, Wisconsin, which is surrounded on three sides by land ("Surrounding Land") owned by the Wisconsin Department of Natural Resources.[2] (Compl. ¶¶ 3-4.) The United States held a 30-year easement for restoration on the Surrounding Land pursuant to the Wetland Reserve Program, 16 U.S.C. § 3837. (Compl. ¶ 5.) Consequently, the Wisconsin Department of Natural Resources and the United States engaged in demolition, construction and other activities on the Surrounding Land through the Natural Resources Conservation Service ("NRCS").[3] (Compl. ¶¶ 8-9.) The NRCS caused the removal of drain tiles and the construction of water control structures on the Surrounding Land in the 1920s. (Compl. ¶¶ 10-11.) The Roaths charge that such removal and construction, in conjunction with other NRCS activities on the Surrounding Land, caused the ground water on the Roath's property to elevate in 2008, which resulted in significant property damage. (Compl. ¶¶ 12-24.)

Rule 12(c) permits a party to move for judgment on the pleadings. Fed. R. Civ. P. 12(c); *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). All facts alleged in the complaint are taken as true, with all reasonable inferences drawn in plaintiff's favor. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). The standard used to review a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is applied. *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452.

---

[2] The Wisconsin Department of Natural Resources designated the Surrounding Land as the Turtle Valley Wildlife Area.

[3] The Natural Resource Conservation Service is an agency within the Department of Agriculture. *See* Pub. L. No. 74-46, 49 Stat. 163 (1936), *amended by* Pub. L. No. 99-198, 99 Stat. 1354 (1990).

2

The complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 129 S. Ct.1937, 1949 (2009); *Pisciotta*, 499 F.3d at 633. Factual allegations must be enough to rise above the speculative level. *Pisciotta*, 499 F.3d at 633. Accordingly, enough facts must be set forth to state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The essence of the motion is that even assuming all asserted facts are accurate, plaintiff has no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999).

Documents attached to the motion are considered part of the pleading if they are referred to in the complaint and are central to the claim. *Wright v. Associated Ins. Co.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Thus in analyzing a 12(c) motion for judgment on the pleadings, the court must evaluate whether attached documents are within, or outside, the pleadings. *See Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752-753 (7th Cir. 2001). The court may consider public records without converting a 12(c) motion to one for summary judgment. *Pugh v. Tribune Co.*, 521 F.3d 686, 691 (7th Cir. 2008).

In opposition to the United State's 12(c) motion for judgment on the pleadings, the Roaths filed an affidavit including copies of various publically available regulations, manuals, handbooks, guidelines and directives. (Doc. 5). The affidavit also includes a deposition transcript and an exhibit to the deposition, from a related state action between the Roaths and the Wisconsin Department of Natural Resources.[4] For the purposes of the government's 12(c) motion this court considers the publically available documents filed by

---

[4]*Daniel R Roath v. State of Wisconsin Department of Natural Resources*, Case No. 09-CV-376 (filed March 11, 2009).

3

the Roaths. However, this court finds that the deposition and exhibit are matters outside the pleadings and will not consider these documents.[5]

II.

The United States is protected from suits without its consent pursuant to the ancient common law doctrine of sovereign immunity. *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("[S]overeign immunity shields the Federal Government and its agencies from suit."). Under the Federal Tort Claims Act "FTCA", the United States waives its sovereign immunity for civil actions in circumstances where a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b). The FTCA includes a number of exceptions to its broad waiver of sovereign immunity. *Berkovitz v. Berkovitz*, 486 U.S. 531, 535 (1988). One such exception, known as the "discretionary function" exception, states that Section 1346(b) shall not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The court applies a two-part analysis to determine whether a challenged governmental action or omission constitutes a discretionary function that gives

---

[5] Roaths oppose the conversion of this matter to a Rule 56 motion for summary judgement. (Doc. 38.) Finding in favor of their informal opposition, the court must exclude documents that are not within the pleadings, as required by rule 12(c). When applying the discretionary function exception "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). Accordingly, the deposition and exhibition are not relevant to the court's discretionary function exception analysis.

4

rise to immunity from liability.  *Berkovitz*, 486 U.S. at 535; *Grammatico v. United States*, 109 F.3d 1198, 1200 (7th Cir. 1997).

First, the court ascertains whether the subject acts or omissions involve an element of judgment or choice.  *United States v. Gaubert*, 499 U.S. 315, 322 (1991).  However, the requirement of judgment or choice is not satisfied if a federal statute, regulation or policy prescribes a course of action for an employee to follow and presents no rightful option but to adhere to the directive.  *Id.*  Therefore, if the government imposes a specific mandatory directive, then conduct pursuant to the directives is not discretionary.  *See Berkovitz*, 486 U.S. at 536; *Palay v. United States*, 349 F.3d 418, 427 (7th Cir. 2003).  Under circumstances where the relevant statutes and regulations include factors upon which decisions are to be made, the Seventh Circuit maintains that the "sheer number of factors involved [in such decisions] suggests that Congress intended these decisions to be made as an exercise of judgment and choice."  *Rothrock v. United States*, 62 F.3d 196, 199 (7th Cir. 1995) (citing *Gaubert*, 499 U.S. at 322).

Second, "even assuming that the challenged conduct involves an element of judgment, such conduct is protected only if that judgment is of the kind that the discretionary function exception was designed to shield . . . ." *Gaubert*, 499 U.S.at 322-23; *see also Reynolds v. United States*, 549 F.3d 1108, 1112 (2008) (finding that malicious and bad faith conduct does not fall within the discretionary function exception).  "Because the purpose of this exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy . . . the exception protects only governmental actions and decisions based on considerations of public policy."  *Gaubert*, 499 U.S. at 323.  Thus, only governmental actions and decisions

5

based on considerations of public policy are protected by the exception. *Berkovitz*, 486 U.S. at 537.

Decisions that require a balancing of safety and economics fall within the exception. *See Grammatico*, 109 F.3d at 1202; *Maas v. United States*, 94 F.3d 291, 297 (7th Cir. 1996); *see also Oceanview Farms v. United States*, No. 99-2096 (4th Cir. 2000) ("[A]lthough NRCS design decisions involved technical engineering judgements, the design considerations - including functional effectiveness, safe performance, cost effectiveness, and adaptation of surrounding water and landscape resources - were also susceptible of policy analysis . . . [T]herefore, [] the design consideration fell within the discretionary function exception.").

In *Cisco v. United States,* 768 F.2d 788, 789 (7th Cir. 1985) the Seventh Circuit found that "[w]hether the EPA acted negligently or even abused its discretion has no effect on the applicability of the discretionary function exception." Thus, despite the Roaths' contention that the United States was negligent in planning and executing restoration work on the Surrounding Land, this court first analyzes the relevant statutes, regulations and agency policies to decide whether the discretionary function exception applies.

### A. Statutes and Regulations

Congress authorized the United States Department of Agriculture ("USDA") to restore, protect, or enhance wetlands on private land through the Wetlands Reserve Program. 16 U.S.C. § 3837(a)(2). Section 3837 sets forth the general criteria for enrolling lands in the Wetland Reserve Program, listing various "methods of enrollment," and providing the authority to utilize any "combination of [] options" listed. 16 U.S.C. §§ 3837(a)-(d). This section also provides that land is eligible for enrollment if "the likelihood

6

of the successful restoration . . . merit inclusion of such land in the program taking into consideration the cost of such restoration." 16 U.S.C. §§ 3837(a)-(d).

For these reasons, the United States asserts that Section 3837 provides it with broad discretion to implement the Wetland Reserve Program. The court agrees as it is clear on the face of the provision that in allowing the agency to consider, inter alia, the "likelihood of . . . success" and the "cost of such restoration" that the agency is provided with judgments and choices concerning which lands it enrolls in the program. Moreover, Section 3837 requires the agency to consider various environmental and economic factors. Consequently, Congress vested considerable discretion in the USDA to administer the Wetland Reserve Program.

The regulations in Part 1467 set forth the policies, procedures, and requirements for the Wetlands Reserve Program. 7 C.F.R. § 1467.1(a). These general criteria for administering the program give the Chief of the USDA the discretion to modify or waive a provision where it is inconsistent with environmental and cost efficiency goals. 7 C.F.R. § 1467.2(a)-(g). Part 1467 also includes the framework for developing the Wetland Reserve Plan of Operations ("WRPO"). 7 C.F.R. § 1467.12. It states:

> The WRPO will specify the manner in which the enrolled land will be restored, protected, enhanced, maintained, and managed to accomplish the goals of the program. The WRPO will be developed to ensure cost-effective restoration and maximization of wildlife benefits and wetland functions and values. . . . The NRCS will review, revise, and supplement the WRPO as needed.

7 C.F.R. § 1467.12(a)-(b). Accordingly, NRCS is required to consider "wild life benefits" as well as wetland "functions and values" when implementing the Wetland Reserve Program. 7 C.F.R. § 1467.3. The functions and values encompass the hydrological and

7

biological characteristics of wetlands and the socioeconomic value placed upon these characteristics, including: habitats for migratory birds and other wildlife; protection and improvement of water quality; attenuation of water flows due to flood; recharge of ground water; protection and enhancement of open space and aesthetic quality; protection of flora and fauna; and contribution to educational and scientific scholarship. 7 C.F.R. § 1467.3. Such environmental factors, coupled with socioeconomic considerations, require a multifaceted evaluation of various factors. Thus, the regulations in Part 1467 provide the United States with considerable discretion to decide how enrolled lands will be restored, protected, maintained and managed.

The USDA established the NRCS to provide national leadership in the conservation, development, and productive use of the Nation's natural resources. 7 C.F.R. § 600.1(a). Part 653 allocates responsibility for the technical adequacy of conservation practices to the NRCS. 7 C.F.R. § 653.1. This part also requires technical criteria to be established for all conservation practices, 7 C.F.R. § 653.1, and that the standards provide the guidance and direction needed to assure that the practices meet the intended purpose and are of the necessary quality. 7 C.F.R. § 653.2. Additionally, the technical standards and criteria are developed on a national basis and may require special adaptation to meet local needs. 7 C.F.R. § 653.3.

The Roaths suggest that the regulations in Part 653 mandate "technical adequacy," from which the NRCS has no discretion to deviate. These regulations state that the technical standards are used as "guidance . . . to assure that the practices meet the intended purpose." Moreover, Part 653 allows local offices to "adapt" the national technical standards to "meet local needs." This Part also gives the NRCS discretion to use "practical

8

experience(s)" in setting standards. As a consequence, this court finds that the regulations referenced in the pleadings provide the NRCS with broad discretion to establish technical standards when implementing the Wetland Reserve Program.

Nevertheless, the court must consider whether the discretion provided by the relevant statutes and regulations, and exercised by the United States in planning and executing restoration work on the Surrounding Land, is of the type that the discretionary function exception seeks to protect. The relevant statues and regulations provide the United States with the authority to make decisions that require a balancing of safety and economics. For example, Part 1467 requires the development of the WRPO, which specifies the manner in which the wetlands are restored, protected, enhanced and maintained. Moreover, ths part directs the United States to "ensure cost-effective restoration and maximization of wildlife benefits." 7 C.F.R. § 1467.12(a)-(b). Similar considerations are sprinkled throughout the relevant statutes and regulations, thereby providing the United States with a myriad of judgments and choices. Thus, with respect to the aforementioned sections, the United States is not subject to liability under the discretionary function exception.

## B. Agency Directives

The Roaths argue that the NRCS conduct violated the following agency directives: NRCS General Manual, Engineering Field Handbook, and Field Operations Technical Guide. They contend that such materials are specific and mandatory policies, and as such, the United States may be held liable under the FTCA.

The Supreme Court held that when an agency fails to act in accord with a "specific mandatory directive, that the discretionary function exception does not apply." *Berkovitz,*

9

486 U.S. at 544. An agency manual, in contrast to a regulation, is not necessarily entitled to the force and effect of law. *Aragon v. United States*, 146 F.3d 819, 824 (10th Cir. 1998). Consequently, the court has to consider whether the referenced agency manuals, handbooks and guidelines are mandatory and entitled to the force and effect of law.

The distinction between legislative and interpretive rules is drawn to determine whether, among other things, a rule has the force and effect of law. *Prod. Tool Corp. v. Emp't & Training Admin., U.S. Dep't of Labor*, 688 F.2d 1161, 1165 (7th Cir. 1982). Unfortunately, "[d]istinguishing between a legislative rule . . . and an interpretive rule . . . is often very difficult." *Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165, 167 (7th Cir. 1996). And, "the line between [them] is . . . far from clear." *Monahan v. Winn*, 276 F. Supp.2d 196, 213 (D. Mass. 2003).

Legislative rules have the force and effect of law. *Doe v. Reivitz*, 830 F.2d 1441, 1146 (7th Cir. 1988); *Prod. Tool Corp.*, 688 F.2d at 1165. An agency issues legislative regulations pursuant to a congressional delegation of authority and it promulgates such rules with certain procedures, namely, the notice-and-comment procedures of the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 553; *Hanson v. Espy*, 8 F.3d 469, 473 (7th Cir. 1993). By contrast, interpretive rules, general statements of policy or rules of agency organization, procedure or practice are exempted from the notice-and-comment requirements. 5 U.S.C. § 553. Accordingly, the Seventh Circuit holds that, generally, interpretive rules are persuasive and are not entitled to the force and effect of law. *Doe*, 830 F.2d at 1146; *Prod. Tool Corp.*, 688 F.2d at 1165. Although there are some situations where interpretive rules may create law, *Al. Tissue Ctr. of the Univ. of Al. Health Serv.*

*Found. v. Sullivan*, 975 F.2d 373, 378 (7th Cir. 1992), as a practical matter, interpretive rules are not promulgated in this manner and do not have the force of law.

Promulgation in accordance with the APA is not the only relevant consideration in determining whether a rule, manual or guideline is mandatory and has the force of law. The court may also analyze the power that the agency used to create the rule:

> Rules are legislative when an agency is exercising delegated power to make law through rules, and rules are interpretive when the agency is not exercising such delegated power in issuing them. . . . [W]hen an agency has such granted power [to make law through rules], the rules are interpretative unless it *intends* to exercise the granted power.

*Metro. Sch. Dist. of Wayne Twp. v. Davila*, 969 F.2d 485, 490 (7th Cir. 1992) (emphasis added). Thus, the intent of an agency may be evaluated to see whether its various manuals are entitled to the force of law. *See, e.g.*, *Aragon*, 146 F.3d at 824-25 (dismissing the plaintiff's FTCA claim and finding that because the Air Force Manual was intended to provide guidance, it was not a mandatory directive); *Hamlet v. United States*, 63 F.3d 1097, 1105 (Fed. Cir. 1995) (finding that the court must consider the intent of the promulgating agency when deciding whether an agency's personnel manual is an enforceable regulation).

Additionally, courts may evaluate whether the rule or manual was merely for internal uses. *See, e.g.*, *Schweiker v. Hansen*, 450 U.S. 785, 788 (1981) (noting that the Social Security Administration's Claims Manual is for internal uses and has no legal force and does not bind the agency); *Cooley v. United States*, 791 F. Supp. 1294, 1306 (E.D. Tenn. 1992) (noting that the Mine Safety and Health Administration's internal procedures do not have the force of law). The Seventh Circuit has used an agency's characterization of the

11

rule to determine whether it has the force of law. *Davila*, 969 F.2d at 489. However, the agency's characterization is not dispositive, but a relevant factor. *Id.*

    i.    NRCS Policy Manual - Parts 403 and 514 and Engineering Field Handbook - Part 650

The Ninth Circuit Court of Appeals addressed whether the NRCS Manual is mandatory in connection with a dispute involving a Wetland Reserve Program. In *Big Meadows*, a landowner sold to the United States, through the NRCS, a conservation easement to implement the Wetland Reserve Program. *Big Meadows Grazing Ass'n v. United States ex rel. Veneman*, 344 F.3d 940, 941 (9th Cir. 2003). Despite disagreements between Big Meadows and the United States about which conservation activities would occur, the United States implemented unilaterally a disputed conservation plan. *Id.* at 941. The land owner brought suit against the United States seeking a declaratory judgment that implementation of the conservation plan violated the relevant statues, regulations, and the NRCS Manual. *Id.* at 944-45.[6] The court found that the Manual did not bind the government because it was neither substantive in nature nor promulgated in accordance with the APA. *Id.* at 945. Although some sections of the NRCS General Manual were not promulgated in accordance with the APA, other sections of the Manual were promulgated in accordance with the APA.

Part 403 of the NRCS General Manual is a subsection of Title 120 - Administrative Services that describes the various directives, procedures for preparing and amending directives, and requirements for editing directives. *NRCS General Manual*, Title 120, Part

---

[6]Although *Big Meadows* is distinguishable from the present case because the *Big Meadows* action was not brought under the FTCA and the plaintiffs in *Big Meadows* sought a declaratory judgment, the procedural and factual differences do not change the legal effect of the referenced Manual.

12

403.0. A directive is defined in Part 403 as written communications that initiate or govern actions, conduct, or procedures. *NRCS General Manual*, Title 120, Part 403.1. This Part also outlines the system for cataloging various directives. *NRCS General Manual*, Title 120, Part 403.2. Part 403 was not promulgated in accordance with the APA and this court does not find evidence that the NRCS intended to bind itself to Parts 403. Indeed, the evidence suggests that this part was for internal use inasmuch as it provides administrative guidance for creating and editing directives.

Part 514 of the NRCS General Manual allocates responsibilities for implementing the Wetland Reserve Program. *NRCS General Manual*, Title 440, Part 514. The National Headquarters and the Regional Offices of the USDA are given broad responsibilities, and the respective State and Field Offices have multiple duties, including the responsibility to comply with the Field Operations Technical Guide. *NRCS General Manual*, Title 440, Part 514.02. Part 514 of the Manual was not promulgated in accordance with the APA and there is no evidence that the agency intended that it be binding. Additionally, as this Part sets forth responsibilities for the general administration of the program, it follows logically that this part was only for internal use. Hence, this court finds that sections 403 and 514 of the NRCS General Manual are not mandatory, and do not have the force of law.

Parts of the National Engineering Handbook, including the "conservation practice standards," were promulgated in accordance with the APA. *See generally National Engineering Handbook*. Chapter 13 of the National Engineering Handbook includes Part 650, which is entitled the Engineering Field Handbook. *Id.* With regard for this, the Roaths allege that the United States violated its mandatory directives as provided in Part 650 of Chapter 13. However, Chapter 13 was not promulgated in accordance with the APA and

13

there is no evidence that the agency intended to be bound to the requirements of this Chapter. The stated purpose of Chapter 13 is to "provide field personnel with *guidance* in restoring, enhancing, or creating wetlands." *National Engineering Handbook*, Part 650.1300(a) (emphasis added). This purpose implies that the document was for internal purposes and merely a guide. As such, this court finds that Chapter 13 of the Engineering Field Handbook is not mandatory and does not have the force of law.

  ii.  Field Operations Technical Guide - Conservation Practice Standard 657

Prior to the enactment of the Federal Agriculture Improvement and Reform ("FAIR") Act of 1996, Pub. L. No. 104-127, 110 Stat. 888 (Apr. 4, 1996), the various guidelines and manuals of the NRCS were not promulgated or amended in accordance with the APA. However, under the FAIR Act, the Secretary of Agriculture must provide for public notice and comment for certain agency material, including the conservation practice standards.

An agency manual has the force and effect of law if it was promulgated in accordance with the APA. *Miller*, 804 F.2d at 426. However, generally, substantive administrative rules and regulations apply only to conduct occurring after the effective date. *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 946 (1997); *Stone v. Hamilton*, 308 F.3d 751, 754 (7th Cir. 2002). Further, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1998); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). Just as caution must be exercised before giving statutory language retroactive effect, courts must refrain from giving retroactive effect to agency policy guidelines. *Smith v. Metro. Sch. Dist. of Perry Tp.*, 128 F.3d 1014, (7th Cir. 1997). Thus, although Conservation Practice Standard 657 became mandatory

14

upon the enactment of the FAIR Act, whether the government may be held liable for damages on the Roath property depends upon when the alleged harmful government conduct occurred.

In this case, the Roaths pled that the United States, through the NRCS, engaged in the conduct harmful to the Roath's property during its 30-year easement on the Surrounding Land, which began in the 1920s. The Roaths did not specifically allege that harmful government conduct occurred after this period. Nevertheless, a reading of the Roaths' complaint in a light most favorable to the plaintiff would not forgo the possibility of recent governmental activity that caused damage to the Roaths' property. Because this court will not construe to the conservation practice standards as having retroactive effect, an issue of fact remains as to whether the United States engaged in any harmful conduct subsequent to the date that Conservation Practice Standard 657 became mandatory and was given the force of law. Therefore, this court will deny without prejudice defendant's 12(c) motion for judgment on the pleadings pertaining to whether the United States is not subject to liability for the alleged violations of Conservation Practice Standard 657.

III.

The United States applied for, and was granted, a permit from the Wisconsin's Department of Natural Resources to implement the Wetland Reserve Program. The permit lists terms and conditions, which require applicants to comply with various state statutes and certain NRCS standards. The Roaths contend that the United States must comply with the terms of the permit, including the Wisconsin laws referenced within the permit. Additionally, the Roaths assert that even if these NRCS standards are not otherwise mandatory, certain standards are made mandatory because they are incorporated by

15

reference into the state law. In essence, the Roaths argue that they are entitled to recovery under the FTCA for the United States' alleged violations of the permit and the Wisconsin State laws referenced in the permit.

Although the particular issue is not raised by either party, this court finds it prudent to determine whether the Roaths have standing to seek damages from the United States under the FTCA for its alleged violations of the permit and the laws referenced within. Under Chapter 353 of Wisconsin's Administrative Code, a party may seek a permit to implement Wisconsin's Wetland Conservation Activities. Wis. Adm. Code § NR 353.01. A party violating the terms and conditions of the permit may be required to pay a penalty to the State of Wisconsin or to the local municipality for such violation. Wis. Adm. Code § NR 353.119(1).[7] It appears as though neither Chapter 353 nor the relevant sections of the Wisconsin Statutes provide for a private right of action for such violations. Therefore, it is not clear whether claimed violations of any relevant Wisconsin statute allow a third party in this instance, the Roaths, to seek damages.

Nevertheless, even where a statute does not provide explicitly for a private right of action, Wisconsin courts have analyzed legislative intent to determine whether a private right of action is appropriate. *McNeill v. Jacobson*, 198 N.W.2d 611, 614 (Wis. 1972). Additionally, it is also not clear whether the alleged violations by the United States of the permit that it obtained to implement the Wetland Reserve Program are actionable under the FTCA. Hence, this court finds that defendant cannot prevail on its Rule 12(c) motion for judgment on the pleadings as it pertains to whether the United States is not subject to

---

[7]Violations of this chapter shall be subject to enforcement under the enforcement and penalty provisions of Chs. 23, 29, 30, 31, 281 and 283, Stat.

16

liability for the alleged violation of its Wisconsin Department of Natural Resources permit and the relevant laws respecting said permit. Now, therefore,

IT IS ORDERED that defendant's 12(c) motion for judgment on the pleadings is granted in part as it pertains to the referenced statues and regulations;

IT IS FURTHER ORDERED that defendant's 12(c) motion for judgment on the pleadings is granted in part as it pertains to the referenced sections of the NRCS General Manual and Engineering Field Handbook;

IT IS FURTHER ORDERED that defendant's 12(c) motion for judgment on the pleadings is denied without prejudice as it pertains to Conservation Practice Standard 657;

IT IS FURTHER ORDERED that defendant's 12(c) motion for judgment on the pleadings is denied without prejudice as it pertains to violations by the United States of its permit to implement its Wetland Reserve Program;

IT IS FURTHER ORDERED that a scheduling conference shall be held on February 7, 2012, at 11:30 AM in Courtroom 222.

Dated at Milwaukee, Wisconsin, this 30th day of December, 2011.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE